# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **RAMSEY MITCHELL,** *Plaintiff* § § § | |
| **v.** § § | Case No. 1:21-cv-00388-RP |
| **BIG FISH ENTERTAINMENT, LLC,** *Defendant* § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant Big Fish Entertainment, LLC's Motion to Dismiss Plaintiff's First Amended Complaint, filed April 25, 2022 (Dkt. 90); Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, filed May 9, 2022 (Dkt. 91); and Big Fish's Reply, filed May 16, 2022 (Dkt. 92). By Text Order entered October 17, 2022, the District Court referred Defendant's Motion to the undersigned Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I.  Background

Live PD was a reality TV series that aired on the A&E Network from October 2016 to May 2020. Dkt. 89 (Plaintiff's First Amended Complaint) ¶ 13. Live PD followed members of law enforcement agencies, including the Williamson County, Texas Sheriff's Office ("WCSO"), using embedded film crews. *Id.* Defendant Big Fish Entertainment, LLC ("Big Fish") produced Live PD, and A&E Television Networks, LLC ("AETN") distributed it. *Id*

1

In January 2018, the WCSO and Big Fish entered into an agreement (the "Access Agreement"), which allowed Big Fish access to WCSO's operations in filming and producing Live PD. Dkt. 89 ¶ 18. The agreement was renewed in June 2019. Dkt. 63-2.

Plaintiff Ramsey Mitchell alleges that, on June 14, 2019, WCSO deputies pulled him over as he was driving because his car was missing a front license plate. *Id.* ¶ 10. The deputies allegedly instructed Mitchell to turn off his car and stay seated inside it while they waited for a Live PD film crew. *Id.* ¶ 32. After the film crew arrived, the deputies removed Mitchell from his car to perform field sobriety tests. *Id.* ¶¶ 37, 43. "While being searched for weapons, Mitchell attempted to evade the encounter but was only able to take a few steps before being tackled by [Deputies] Johnson, Luera and Camden, slammed to the ground, and assaulted." *Id.* ¶ 44. Mitchell alleges that he was punched, kicked, tased, placed in a chokehold, and left unconscious by the deputies, and was unable to walk or stand for several weeks. *Id.* ¶¶ 45-46, 55.

After the alleged assault, the Big Fish producer at the scene urged the deputies to obtain a signed media release from Mitchell. *Id.* ¶ 49. He alleges that the deputies delayed transporting him to the hospital and threatened him with additional charges if he did not sign the release. *Id.* ¶¶ 48, 50. Mitchell refused and never signed the release, but the incident aired on Live PD nonetheless. *Id.* ¶ 57.

On May 3, 2021, Mitchell filed this suit against Williamson County, Sheriff Robert Chody, the responding WCSO deputies, AETN, and Big Fish. Dkt. 1. Mitchell voluntarily dismissed his claims against all defendants except Big Fish and AETN. Dkts. 82, 84, 86.

On March 29, 2022, the District Court entered an Order dismissing Mitchell's claims for negligence, gross negligence, and civil conspiracy against Big Fish and AETN, but granted Mitchell leave to amend his negligence and gross negligence claims against Big Fish. Mitchell

filed an amended complaint on April 11, 2022, which is his live pleading. Dkt. 89. Big Fish now moves the Court to dismiss Plaintiff's First Amended Complaint for failure to state a claim under Rule 12(b)(6).

## II. Legal Standard

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry generally is limited to (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III.     Analysis

The Access Agreement between Big Fish and WCSO states that they "do not by this Agreement intend to form an employment relationship or agency relationship or a partnership or joint venture between them and in no event shall this Agreement be construed to constitute such an employment relationship, agency relationship, partnership or joint venture." Dkt. 63-2 at 4. The Agreement further states that Big Fish and WCSO "shall at all times continue to independently conduct their operations and activities as they customarily operate, without regard to any other creative or logistical requests placed upon them by, or as a result of, the filming and production of [Live PD]." *Id.*

In his First Amended Complaint, Mitchell alleges that, contrary to this language, Big Fish and WCSO influenced each other's actions. Dkt. 89 ¶ 59. For example, Mitchell alleges that Sheriff Chody had "editorial control over content aired on Live PD." *Id.* ¶ 61. Mitchell further alleges that Big Fish "gave Chody an ultimatum – either engage in more entertaining encounters that could be aired on Live PD, which would include more use of force incidents, or Live PD would have to leave Williamson County and find a different and more entertaining department to film with." *Id.* ¶ 64.

Big Fish argues that Mitchell's First Amended Complaint should be dismissed because it does not cure the deficiencies in the original complaint that formed the basis for the District Court's prior decision. In particular, Big Fish avers that "Mitchell has failed to add a single allegation that changes this Court's conclusion that Big Fish owed no legal duty to Mitchell to exercise reasonable care in filming or releasing the footage of Mitchell, or to intervene and prevent the actions of the WCSO officers during Mitchell's arrest." Dkt. 90 at 7.

Mitchell responds that he has alleged a special relationship between Big Fish and WCSO based on WCSO's "considerable influence" on Live PD, which goes "beyond the simple 'arms-length' relationship it has sought to portray in legal documents." Dkt. 91 at 12. Mitchell further argues that Big Fish was "on notice of the foreseeability of injury to Plaintiff because its cameras routinely captured excessive force and the producers of Live PD encouraged such excessive force for viewer entertainment." *Id.* Mitchell contends that he has satisfied his burden to state a plausible claim for relief because he has alleged that "an additional agreement existed outside of the contours of the access agreement." *Id.* at 13-14.

The Court concludes that Mitchell has not cured the deficiencies in his pleading and recommends that his claims for negligence and gross negligence should be dismissed.

To state a claim for negligence under Texas law, a plaintiff must show the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). The existence of a duty is a question of law. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). A duty may exist where there is a "special relationship between the actor and the third person, such as employer-employee, independent contractor-contractee, or parent-child." *Rodriguez v. Spencer*, 902 S.W.2d 37, 42 (Tex. App.—Houston [1st Dist.] 1995, no pet.). Without a relationship creating a right of control, a person has no duty to control the conduct of another even if he has the practical ability to exercise such control. *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993) ("In the absence of a relationship between the parties giving rise to the right of control, one person is under no legal duty to control the conduct of another, even if there exists the practical ability to do so."); *Otis Engr. Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983) ("As a general rule, one person is under no duty to control the conduct of another, even if he has the practical ability to exercise such control.") (citation omitted).

In granting Mitchell leave to amend, the District Court recognized that a contract can be the source of a special relationship creating a duty of care, but found that nothing in Plaintiff's Original Complaint or the Access Agreement suggested such a duty. Dkt. 88 at 8. The District Court wrote that "if other circumstances exist with respect to the contract," Mitchell might be able to state a plausible claim on that basis. *Id.* The Court therefore permitted Mitchell to amend his complaint to "identify a basis in the contract or elsewhere to establish a duty to him on the part of Big Fish." *Id.* at 11.

In his Amended Complaint, Mitchell asserts that the parties had a relationship that "extended beyond" the Access Agreement:

> The relationship between Defendant and law enforcement extended beyond the simple "arms-length" relationship it has sought to portray in legal documents. To the contrary, Big Fish and law enforcement officials within Williamson County, including Sheriff Robert Chody, exercised considerable influence and decision-making on the program.

Dkt. 89 ¶ 3.

The Court concludes that Mitchell's new allegations fall short of creating a duty of care. Without any basis in the Access Agreement, Mitchell has identified no special relationship recognized under Texas law. *See, e.g.*, *Carter v. Abbyad*, 299 S.W.3d 892, 895 (Tex. App.—Austin 2009, no pet.) ("Examples of relationships that have been recognized as giving rise to a duty to control include employer/employee, parent/child, and independent contractor/contractee."). Mitchell has alleged only that Big Fish had the practical ability to influence WCSO's conduct, not that Big Fish had a right of control over WCSO. *See Graff*, 858 S.W.2d at 920; *compare Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 36 (Tex. 2002) (recognizing special relationship between care facility and patient because, unlike "the ordinary physician-patient relationship," facility's contract with state gave rise to right to control patient), *with Exxon Corp. v. Quinn*, 726 S.W.2d 17, 20

6

(Tex. 1987) (holding that contractee could not be liable for negligence where it did not have control or "the right to exercise control over the details or supervise the manner in which [the contractor] performed its assignment"). Mitchell's new allegations regarding the control WCSO exercised over Big Fish and the content aired on Live PD say nothing about Big Fish's control of WCSO. Dkt. 89 ¶ 61.

Mitchell's First Amended Complaint also includes additional allegations regarding Big Fish's knowledge of the "drastic increase of use of force cases in Williamson County during the time in which Big Fish filmed with the WCSO." Dkt. 91 at 11-12; Dkt. 89 ¶¶ 87-93. As the District Court stated, however, "foreseeability alone is insufficient to establish a duty." Dkt. 88 at 7.

Because Mitchell has not alleged the existence of a legal duty, he has failed to state a claim for negligence.

With respect to Mitchell's gross negligence claim, conduct cannot be grossly negligent without being negligent. *Almanzar v. Eaglestar*, No. EP-20-CV-117-KC, 2021 WL 7184209, at *8 (W.D. Tex. Dec. 21, 2021) (stating that a "finding of negligence is a prerequisite to a finding of gross negligence") (quoting *Gonzalez v. VATR Const. LLC*, 418 S.W.3d 777, 789 (Tex. App.—Dallas 2013, no pet.))). As Mitchell has not stated a plausible claim for negligence, he also has not stated a claim for gross negligence.

## IV.   Recommendation

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant Big Fish Entertainment, LLC's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 90).

It is **FURTHER ORDERED** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on November 8, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE